# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**TONY GRIFFIN**  **PLAINTIFF**
**ADC #150964**

v.  No: 4:23-cv-00524-BRW-PSH

**KURTIS HOLCOMB**  **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Tony Griffin filed a *pro se* complaint on June 6, 2023, while incarcerated at the Arkansas Division of Correction's North Central Unit (Doc. No. 1). The Court subsequently granted Griffin's application to proceed *in forma pauperis* and directed him to file an amended complaint (Doc. No. 4). The Court

screened Griffin's amended complaint (Doc. No. 5) and allowed his Eighth Amendment failure-to-protect claim against defendant Kurtis Holcomb to proceed. *See* Doc. Nos. 7 & 10. His remaining claims were dismissed. *See* Doc. No. 10.

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts (Doc. Nos. 35-37) filed by Holcomb, claiming that Griffin did not exhaust available administrative remedies with respect to his claims against him before he filed this lawsuit. Griffin filed two pleadings in response to Holcomb's motion for summary judgment (Doc. Nos. 39 & 41),[1] and Holcomb filed a reply (Doc. No. 42). For the reasons described below, Holcomb's motion for summary judgment should be granted.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir.

---

[1] The Court notified Griffin of his opportunity to file a response and separate statement of disputed facts, but he failed to file a separate statement of disputed facts. *See* Doc. No. 38. Because Griffin failed to controvert the facts set forth in Holcomb's statement of undisputed material facts, Doc. No. 37, those facts are deemed admitted. *See* Local Rule 56.1(c).

2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Analysis

Holcomb argues that he is entitled to summary judgment on Griffin's claims because Griffin failed to exhaust all available administrative remedies before he filed this lawsuit.  *See* Doc. No. 36.  In support of his motion, Holcomb submitted: the declaration of Terri Grigsby, the ADC's Inmate Grievance Supervisor (Doc. No. 35-1); the ADC's grievance policy (Doc. No. 35-2); a copy of Griffin's grievance history (Doc. No. 35-3); and a copy of Grievance PB-23-00104 (Doc. No. 35-4).  At the Court's direction, Holcomb also submitted a copy of Grievance PB-23-00103 (Doc. No. 44).

### A.   *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court.  *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014).  Exhaustion under the PLRA is mandatory.  *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA does not prescribe the manner in which exhaustion occurs.  *See Jones v. Bock*, 549 U.S. at 218.  It merely requires compliance with prison grievance

procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 35-2 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form (Attachment I) within 15 days after the occurrence of the incident. *Id.* at 6. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 5. Only one problem or issue may be grieved per grievance form. *Id.* An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 6. A problem solver or staff member holding the rank of sergeant or above can collect the grievance and return the yellow and pink copies of the grievance to the inmate as receipts. *Id.* at 7. The problem solver or staff member investigates the complaint, and may attempt to resolve the complaint by meeting with the inmate or taking certain other steps, but ultimately must provide a written response at the bottom of the form. *Id.* at 7-8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two

of the grievance procedure and submit either the pink or yellow copy of his Unit Level Grievance Form as a formal grievance. *Id.* at 8. The inmate retains either the pink or yellow copy, whichever he did not submit for Step Two. *Id.* at 9. If a formal grievance is medical in nature, it is assigned a code and forwarded to the appropriate medical personnel for response. *Id.* at 10.

The inmate should receive a Response to the Unit Level Grievance Form (Attachment III or IV depending on whether the grievance is medical in nature), or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at 10-11. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 12. An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II). *Id.* at 12. The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id.* Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 13. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days

absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

### B. *Griffin's Complaint Allegations*

Griffin alleges that defendant Kurtis Holcomb failed to protect him from an attack by another inmate and prevented him from receiving medical attention afterwards. Doc. No. 5 at 4. According to disciplinary records attached to Griffin's original complaint, this incident occurred on March 27, 2023. Doc. No. 1 at 7.

### C. *Griffin's Grievances & Exhaustion*

In her declaration, Inmate Grievance Supervisor Grigsby states that she reviewed Griffin's grievance history from March 27, 2023 (the date of the incident at issue), through June 6, 2023 (the date this lawsuit was filed), for any grievances concerning his claims in this case or naming Holcomb. Doc. No. 35-1 at 6-7, ¶¶ 33-34. Grigsby states that she found one grievance submitted by Griffin pertaining to his claims in this case and that named Holcomb: PB-23-00104. *Id.* at ¶ 34.[2]

---

[2] Griffin's grievance history reflects three grievances were filed between March 27 and June 6, 2023. *See* Doc. No. 35-3 at 1. One was a medical grievance filed on April 5, 2023, and the other two grievances, filed on March 31, 2023, concerned disciplinary matters. *Id.* One of those was PB-23-00104, discussed above. The other was PB-23-00103. Because PB-23-00103 was not part of the record, and because Griffin claimed to have written two grievances on Holcomb, the Court ordered supplementation with a copy of that grievance. *See* Doc. No. 43. A review of PB-23-00103 shows that Griffin did not identify Holcomb and did not describe his claims against him. *See* Doc. No. 44.

Griffin initiated PB-23-00104 by submitting a Step One informal resolution on March 27, 2023, stating:

> I'm writing Holcomb up for not trying to stop a fight and for tell the other officer not to stop it.  For putting me have to fight Charle when I (Tony Griffin) was trying not to fight and was being beatin.  When Holcomb told the officer not to stop the fight, I had to turn to fight Charles because of Holcomb refusing to stop Charles.  So now I'm been charge for fighting when it could have been avoided.  This affect class and my health.  Because I was sprayed and now I'm have severe pain and headaches.  I was also refuse medical because of Holcomb.  Fuller should've know that you don't spray a heart patient.  It could have killed me.  Something need to be done because is out of control at this unit.

Doc. No. 35-4 at 4.[3]  Griffin proceeded to Step Two after receiving a response to his informal resolution.  *Id.* at 6.  His grievance was rejected at the Unit Level on April 7, 2023, because it was determined to involve a disciplinary matter.[4]  *Id.* at 5-6.  Griffin appealed.  *Id.* at 3.  A copy of Griffin's written appeal is not part of the record before the Court, but an appeal rejection form indicates that Griffin's appeal was received on April 25, 2023.  *Id.*  It does not identify what Griffin stated in his appeal.  It states that Griffin's appeal was rejected because he failed to attach his

---

[3] Grievances are transcribed verbatim without any corrections for misspellings or mistakes.

[4] Disciplinary matters are non-grievable.  *See* Doc. No. 35-1 at 2.  Griffin was charged in a disciplinary with use of force on an inmate, failure to obey an order of staff, and destruction of property.  *See* Doc. No. 35-4 at 7.

acknowledgement/rejection form (Attachment II) as required by the grievance policy. *Id*.

In response to Holcomb's motion for summary judgment, Griffin argues that he completed the grievance process with respect to PB-23-00104 by appealing it, and the rejection of that appeal should cause it to be exhausted. Doc. No. 41 at 1. He also argues that his grievance was exhausted when it was initially rejected as a disciplinary matter. *Id.* Griffin does not address his failure to submit the appropriate forms with his appeal. Holcomb concedes that PB-23-00104 was wrongfully rejected at Step Two as grieving a disciplinary matter, but points out that Griffin's remedy was to appeal that decision – which he did – but because he did not attach the appropriate forms, his appeal was rejected and not considered on the merits. *See* Doc. No. 42.

The Court agrees that Griffin's failure to follow the grievance procedure when he submitted his appeal renders his claims unexhausted. As previously stated, the ADC inmate grievance policy instructs inmates that they "must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with [an] appeal." Doc. No. 35-2 at 12. Although rejection of a grievance appeal marks the end of the grievance process, it does not serve to exhaust a claim if the merits of that appeal are not considered. The

Eighth Circuit Court of Appeals has made it clear that a prisoner's remedies are not exhausted unless the inmate pursues the grievance to its final stages *and* receives an adverse decision on the merits.  *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); *Guinther v. Barker*, No. 5:19-CV-00110-BRW-PSH, 2020 WL 4983283, at *8 (E.D. Ark. Aug. 3, 2020), *report and recommendation adopted,* No. 5:19-CV-00110-BRW-PSH, 2020 WL 5005417 (E.D. Ark. Aug. 24, 2020).  Accordingly, although PB-23-00104 described Griffin's complaint allegations against Holcomb, it does not serve to exhaust his claims because his appeal was rejected and not addressed on the merits.

## IV.  Conclusion

The evidence shows that Griffin did not properly exhaust his administrative remedies with respect to the claims he asserts in this lawsuit.  Accordingly, the undersigned recommends that Griffin's motion for summary judgment (Doc. No. 35) be granted and Griffin's claims against Holcomb be dismissed without prejudice for failure to exhaust available administrative remedies.

DATED this 22nd day of January, 2024.

_____
UNITED STATES MAGISTRATE JUDGE